IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
**F I L E D**

MAR 17 2017

ARTHUR JOHNSTON
BY_____ DEPUTY

SCOTT AND JENNIFER BERRY,
INDIVIDUALLY AND ON BEHALF
OF THE MINOR CHILDREN, C.W.B.,
R.L.C., C.C. and A.A.C., and C.D.B.

**PLAINTIFFS**

VS.

CAUSE NO. 1:17cv81 HSO-JCG

FEGEE SIMMS, INDIVIDUALLY AND
AS AGENT FOR MISSISSIPPI DEPARTMENT
OF HUMAN SERVICES
AND JOHN AND JANE DOES 1-10

**DEFENDANTS**

## COMPLAINT
### (JURY TRIAL DEMANDED)

COME NOW the Plaintiffs, Scott and Jennifer Berry, individually and as next friend and

on behalf of C.W.B., R.L.C., C.C., A.A.C., and C.D.B. by and through undersigned counsel,

respectfully submit this Complaint against the Mississippi Department of Human Services, Fegee

Simms, individually and as agent for Mississippi Department of Human Services, and John and

Jane Does 1-10, for damages arising under the Mississippi Torts Claims Act and under 42

U.S.C.A. § 1983 for violations of the Plaintiffs' right under the Fourteenth Amendment of the

United States Constitution.  The Plaintiffs assert the following, to-wit:

### NATURE OF THE ACTION

1.       Since 2004, the Mississippi Department of Human Services, Hancock County

Division has been under a federal consent decree in an attempt to address the extreme problems

in the agency's staffing, workload, and overall competency. Over a decade later, the levels of

dysfunction continue to be a problem for the agency and the families of Hancock County. On

March 18, 2014, Defendant Fegee Simms and her trainee, went to Plaintiffs' (the Berrys') home

to investigate an anonymous allegation that they did not feed their minor children. The Berrys, believing there had been a mistake, allowed Defendants into their home for a conversation. Defendants, while acting under the color of law and absent a search warrant, probable cause or a court order, proceeded to unlawfully search and photograph the entire contents of the home. While Defendants observed a plethora of food, they returned on March 26, 2014 to initiate emergency removal of one of the minor children, again acting under color of law and absent a court order or any justification indicating that such removal was necessary. Following the initial removal, Defendants proceeded to misrepresent facts, make misleading allegations about the character of the Berrys as parents, and to willfully ignore evidence from mental health professionals indicating that the Berrys were fit to provide and care for their minor children.

2.      Over the course of the next 5 months, Defendants repeatedly misrepresented the Berrys character and fitness as parents, denied them access to their minor children, ignored their complaints, ignored facts indicating that removal was not only unnecessary but damaging to the minor children and family, failed to adhere to the requirements of the decades old Olivia-Y federal consent decree, failed to supervise and properly train DHS investigators and caseworkers, and failed to comply with their own policies and procedures as to the handling of child removal.

3.      This is a civil rights complaint for money damages arising under 42 U.S.C. § 1983, 42 U.S.C. § 1988 and the United States Constitution. The action is brought against Fegee Simms, and her co-workers and supervisors, Jane and John Does, who knowingly, intentionally, and wantonly violated the civil rights of Plaintiffs engaged in exemplary parenting of their minor children, and that of their minor children who were deprived the care of their parents for a large percentage of their short lives.

## PARTIES

4.     Plaintiff Jennifer Berry is a person of the full of the full age of majority, residing in Nettleton, Mississippi, who previously resided in Hancock County Mississippi.

5.     Plaintiff Scott Berry is a person of the full of the full age of majority, residing in Nettleton, Mississippi, who previously resided in Hancock County Mississippi.

6.     Plaintiff C.W.B. is the minor child of Scott Berry who resides with him in Nettleton, Mississippi.

7.     Plaintiff R.L.C. is the minor child of Jennifer Berry who resides with her in Nettleton, Mississippi.

8.     Plaintiff C.C. is the minor child of Jennifer Berry who resides with her in Nettleton, Mississippi.

9.     Plaintiff A.A.C. is the minor child of Jennifer Berry who resides with her in Nettleton, Mississippi.

10.     Plaintiff C.D.B. is the minor child of Scott and Jennifer Berry who resides with them in Nettleton, Mississippi.

11.     Defendant Mississippi Department of Human Services is an agency of the State of Mississippi with a division in Hancock County, Mississippi and has an Office in Hancock County as Hancock County Department of Human Services and may be served through its Executive Director, Richard Berry, at 750 North State Street, Jackson, MS, 39202 and through the Mississippi Attorney General, location at 550 High Street, Suite 1200, Jackson, MS 39201.

12.     Defendant Fegee Simms, a person of the full age of majority who is or was an employee of the Mississippi Department of Human Services and/or an employee of Hancock

3

County Department of Human Services and is believed to be a resident of Hancock County,

Mississippi and may be served wherever she may be found.

13.    John and Jane Does 1-10 are state actors whose names are unknown to the

Plaintiffs and whose names cannot be readily discovered, but who acted with deliberate

indifference to the Fourth and Fourteenth Amendment constitutional rights of the parties.

## JURISDICTION, VENUE, AND NOTICE

14.    This Court has subject matter jurisdiction and concurrent jurisdiction in accord

with 28 U.S.C.A. § 1331.

15.    This Court has jurisdiction over the person and entities in accord with the United

States Constitution and Fed. R. Civ. P. 4, such that the exercise of personal jurisdiction over the

parties does not offend traditional notions of fair play and substantial justice.

16.    Venue is proper in this court pursuant to 28 U.S.C.A.  § 1391 as the acts and

omission which are the subject of this suit occurred in whole or in part in Southern District of

United States District Court of Mississippi

## FACTS

17.    On March 18, 2014 Hancock County Department of Human Services investigator

Fegee Simms, and trainee, Melissa (last name unknown) visited the Berry household to

investigate anonymous allegations, stating that they wished only to talk to the family, which

invited the investigators into the home for a conversation.

18.    Upon being given permission to enter the home for the purposes of talking,

Defendant Simms and her trainee, began searching the home and taking photographs, responding

to Ms. Berry's protests that they not search the home by stating that that would provide her with

sufficient probable cause to have the children removed.

4

19.     Defendant Simms and her trainee observed and photographed each room, closet, inside of cabinets, drawers, including a pantry, refrigerator, and freezer with ample food to feed the family. Upon information and belief, Defendant Simms made numerous unsubstantiated assertions that while the Berry household was with sufficient food, the children were only fed ramen noodles, despite substantial evidence to the contrary.

20.     Defendant Simms and her trainee interviewed each of the minor children, and Mr. and Mrs. Berry.

21.     Without permission, absent a warrant, and against Mrs. Berry's protests, Defendant Simms took each child into a private room for questioning.

22.     When Mrs. Berry protested to Defendant Simms conducting an unauthorized search of the home, protested to Defendant Simms interviewing the children and protested to Defendant Simms taking photographs without permission, Defendant Simms threatened to initiate proceedings against the family if they did not comply with her requests.

23.     At the conclusion of Defendants' initial investigation, Mr. and Mrs. Berry were asked for the names and contact information of any witnesses whom the Defendants could contact to question as to the character and suitability of the Berrys as parents.

24.     Mr. and Mrs. Berry provided Defendants with the contact information of several person whom the Defendants could contact to question as to the Berrys character and suitability as parents. Among the persons for whom the Berrys provided contact information to Defendants were Heather Jackson, Leslie King, and Anne Gurren and several family members and social workers.

25.     Defendants did not perform an investigation prior to their initial visit on March 18, 2014. Furthermore, Defendant Simms did contact Ms. Leslie King, who informed Defendant

Simms that, as a mental health professional who was in regular therapeutic contact with the

entire Berry household (both in their physical home, as well as in a traditional mental health

setting) that she had no concerns about the Berrys' parenting skills, or about the safety of their

children under their care. Upon information and belief, Defendant Simms continued questioning

Ms. King as to what concerns she held about the family even after she had provided a full

reporting on the Berry household, relaying to Defendant Simms that the parents were fit to care

and provide for their children.

26.     On learning of the ongoing investigation into the Berrys, Anne Gurren made

several attempts to contact Defendant Simms on behalf of the Berrys, including leaving several

phone messages requesting a callback; however, Defendant Simms either failed to contact Anne

Gurren, or failed to engage Ms. Gurren in a meaningful discussion about the Berrys' character

and fitness as parents.

27.     A simple investigation by contacting the aforementioned mental health

professionals from MYPAC, Mississippi Youth Program Around the Clock, which provides

home-based psychiatric youth services in partnership with the Mississippi Division of Medicaid,

who had been treating and were at the time of removal treating the minor child C.W.B.

individually and ,  with the entire Berry family on a weekly basis, would have helped to alleviate

many of the Defendants' concerns as to the Berrys' suitability as parents.

28.     Notwithstanding a great deal of evidence available to the contrary (both through

her personal observations on her initial visit to the home and through contacting the names the

Berrys had provided), Defendant Simms made and documented multiple misrepresentations to

MDHS about the Berrys' character and fitness to be suitable parents to their children.

29.     Upon information and belief, Defendant Simms stated that the Berrys had unreasonable expectations of their minor children, and particularly mistreated minor Plaintiff C.W.B. Defendant Simms stated on numerous occasions that Plaintiff C.W.B. was isolated from the rest of the family and treated differently. Had Defendant Simms done the bare minimum investigation into the Berrys, she would have found more than sufficient documentation as to their character and fitness as parents.

30.     On March 26, 2014, Defendants Simms returned to the Berry home without a court order for the removal and sought removal of the minor Plaintiff C.W.B.

31.     Defendant Simms stated that the Berrys could allow her to send the minor Plaintiff C.W.B. to a relative's home, or she would take matters into her own hands.

32.     Defendant Simms stated to the Berrys that the constitution did not apply to her actions and she could act as she saw fit; she informed the Berrys that her governmental authority as a DHS investigator superseded that of the Mississippi and United States Constitution and allowed her to remove minor C.W.B. without consent or a court order. Defendant Simms, through intimidation and the misrepresentation of her authority, had the minor child, C.W.B., removed from the Berrys' care.

33.     On or about March 28, 2014, two days following minor C.W.B.'s removal, the Berrys were ordered to appear in Hancock County Youth Court for a compliance hearing in C.W.B.'s biological mother's separate matter.

34.     Upon information and belief, Defendant Simms made unsworn verifiably false accusations about the Berrys' treatment of minor C.W.B., and of their other children, including that they only ate ramen and that C.W.B. was isolated from the children, treated differently, and received a haircut as punishment.

7

35.     Following the initial hearing, and based on misrepresentations made by Defendant Simms to the Hancock County Youth Court about the Berrys' treatment of their children, as well as the Berrys' character and fitness as parents, the Hancock County Youth Court ordered forensic interviews of all the minor children to occur on April 1, 2014, and ordered the minor C.W.B. into the custody of her maternal grandmother, notwithstanding a great deal of evidence that C.WB.'s placement in the maternal grandmother's home, the removal from her home, separation from her siblings and parents, and most importantly, the discontinuation of regular care in the manner C.W.B. had become accustomed to receiving would likely cause serious emotional and psychological harm.

36.     On or about April 1, 2014, forensic interviews were performed of all of the Berrys minor children.[1]  Contrary to the misrepresentations of Fegee Simms, the forensic interviews did not warrant the removal of the minor children.

37.     On or about April 10, 2014, the Berrys appeared in Hancock County Youth Court for a hearing as to the findings of the forensic interviews.

38.     Notwithstanding clear evidence to the contrary, Defendant Simms characterized the remaining four children's forensic interviews as atrocious.

39.     Upon information and belief, Defendant Simms, without being sworn in, recommended that all of the remaining children be taken into custody, citing the results of the forensic interviews. Furthermore, Defendant Simms continually stated that the Berrys had "unhealthy expectations" resulting in "mental maltreatment," regardless of the great weight of evidence to the contrary.

---

[1] Excluding the minor infant, C.D.B, who was too young to receive a forensic interview at the time

40. Based on the unsworn, false misrepresentations by Defendant Simms, an emergency order of removal was issued and the remaining four minor children were ordered into custody.

41. On April 15, 2014, Mr. Berry and his father, Chris Berry, met with Defendant Simms, who insisted that MYPAC had not forwarded her the safety plan that was in place at the time of removal, regardless of evidence to the contrary.

42. On numerous occasions, as stated *supra*, MYPAC social workers unsuccessfully attempted to contact Defendant Simms on behalf of the Berrys.

43. On the April 15, 2014, Defendant Simms misrepresented to Mr. Berry and his father, "As it stands right now we have a no contact order." Notwithstanding her assertion that the removal order called for no contact, the Order dated April 10, 2014, "Corrected Emergency Custody Order," specifically states, "IT IS ORDERED, ADJUDGED AND DECREED that the parents, Scott and Jennifer Berry, shall have visitation with the minor children..."

44. The Berrys were frequently denied access to their children, including information about their well-being, placement, and critical parts of their forensic interviews.

45. The Berrys were not assigned a regular caseworker, and when they and formal counsel complained about Defendant Simms' inappropriate conduct, they were assigned to multiple caseworkers in a brief period of time before being sent back to Defendant Simms.

46. In a meeting with Scott and Chris Berry on or about April 24, 2014 Defendant Simms stated, "this week alone I have fifteen children. Fifteen children in custody. I kept ten kids yesterday in between two areas, ten kids by myself....I can't spend my day talking to parents on the phone..." implying that the burden placed on her by DHC-DHS was too heavy to carry.

47.     Again, this time at the April 24, 2014 meeting, Defendant Simms led Scott Berry to believe that he did not have the right to visit or contact his children, despite that claim being verifiably false.

48.     DHC-DHS failed to supervise Defendant Simms, and to respond to the inappropriate conduct she was directing toward the Berrys. On one occasion, after the Berrys complained of Defendant Simms conduct, but nevertheless had their file placed with her again, Defendant Simms mocked the Berrys' concerns about her behavior by stating, "this is for me cause I know you guys always saying 'can you tell me why my kids are being taken blah blah blah blah blah?' You know how you always ….," mentioning the complaints that the Berrys lodged against her.

49.     Defendant Hancock County Department of Human Services (DHC-DHS) has frequently failed to supervise, train and monitor its social workers and investigators.

50.     Prior to the hiring of Defendant Simms, Defendant Does failed to adequately screen Defendant Simms, or to conduct the bare minimum of investigation into Defendant Simms background. A bare minimum background check on Defendant Simms would have revealed criminal charges sufficient to raise concern over Defendant Simms' suitability as a candidate.

51.     Defendant Does were frequently informed of Defendant Simms conduct and failed to investigate the Berrys' concerns. Furthermore, Defendant Does either failed to supervise Defendant Simms conduct. Not only were the Berrys' concerns ignored, after several complaints lodged, as stated, Defendant Simms was again given charge of the Berrys' case.

52.     Defendant Does allowed Defendant Simms to train new hires, despite clear evidence that she was unqualified to perform her own job in a constitutional and professional manner.

53.     On multiple occasions, Defendant Simms stated that her case load was too great, and contrary to a decades old federal consent decree requiring the reduction of case load per individual case worker, Defendants Doe failed to ensure that case workers were not overloaded, failed to comply with the consent decree, and instead consented to the removal of children for whom there was no legal justification for removal and only served to overburden and already overburdened system.

## COUNT II: DEPRIVATION OF FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHTS BY FEGEE SIMMS UNDER 42 U.S.C. § 1983

54.     The Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set out herein.

55.     By and through the conduct of Defendants' herein, the Plaintiffs were deprived of constitutional rights, and as a result thereof, all Plaintiffs suffered harm, injury, pain and suffering, and emotional distress.

56.     Such acts of Fegee Simms were committed under color of law and under each individual's authority as an officer, agent, or employee of Mississippi Department of Human Services and its local counterpart, the Hancock County Department of Human Services, and were reckless, malicious, intentional, and committed with deliberate and reckless indifference to the mental health, safety, family integrity  and constitutional rights of all Plaintiffs.  As a result, the Plaintiffs suffered harm, injury, pain and suffering and emotional distress.

57.     The Plaintiffs' injuries and damages were also directly and proximately caused by the following intentional, reckless, careless, negligent and/or deliberately indifferent acts and omissions of Fegee Simms, but not limited to:

a.     The failure of Fegee Simms to properly investigate, to monitor, direct, and her investigation thus depriving members of the public, including the Plaintiffs, of their rights under the United States Constitution;

b.     making false statements in Court while not under oath regarding the forensic interviews which cause in whole or in part, the children to be removed from the home;

c.     misrepresenting to the Berrys the contents of the Hancock County Youth Court Order, by telling the Berrys that they could have no contact with the minor children, thus depriving the Berrys due process of law and family integrity as guaranteed by the United States Constitution's Fourteenth Amendment;

threatening, intimidating and otherwise abusing the powers of her office to her advantage and against the Berry's, whom she was hired to serve;

d.     failing to adhere to the appropriate procedures and regulations which would have controlled or governed her investigation into the Berry's. Had she adhered to these procedures agents, foster parents, and/or employees under the circumstances outlined in this Complaint as well as for screening and hiring its employees, agents, and foster p thus depriving members of the public, including the Plaintiffs, of their rights under the United States Constitutions.

52.     The acts of Defendants as afore described entitle Plaintiff to an award of compensatory damages.  In addition, such acts and omissions were intentional, wanton, malicious, oppressive, undertaken with reckless indifference, thus entitling Plaintiff to an award of punitive damages against said Defendant in his individual capacity.

53.     Defendants' acts violated 42 U.S.C. § 1983 by depriving the Berry's of their constitutional right to due process and "family integrity" under the Fourteenth Amendment  and as a result of such acts, Plaintiff sustained damages as set forth herein.

## COUNT IV:  DEPRIVATION OF FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHTS BY JOHN AND JANE DOES 1-10 UNDER 42 U.S.C. § 1983

58.     The Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set out herein.

59.     By and through the conduct of Defendants' herein, the Plaintiffs were deprived of constitutional rights, and as a result thereof, all Plaintiffs suffered harm, injury, pain and suffering, and emotional distress.

60.     Such acts of John and Jane Does 1-10 were committed under color of law and under each individual's authority as an officer, agent, or employee of Mississippi Department of Human Services and its local counterpart, the Hancock County Department of Human Services, and were reckless, malicious, intentional, and committed with deliberate and reckless indifference to the mental health, safety, family integrity  and constitutional rights of all Plaintiffs.  As a result, the Plaintiffs suffered harm, injury, pain and suffering and emotional distress.

61.     The Plaintiffs' injuries and damages were also directly and proximately caused by the following intentional, reckless, careless, negligent and/or deliberately indifferent acts and omissions of John and Jane Does 1-10, but not limited to:

a.      The failure of Jane Does 1-10 to properly investigate, to monitor, direct, and her investigation thus depriving members of the public, including the Plaintiffs, of their rights under the United States Constitution;

b.      making false statements in Court while not under oath regarding the forensic interviews which cause in whole or in part, the children to be removed from the home;

c.      misrepresenting to the Berrys the contents of the Hancock County Youth Court Order, by telling the Berrys that they could have no contact with the minor children, thus

13

depriving the Berrys due process of law and family integrity as guaranteed by the United States Constitution's Fourteenth Amendment;

threatening, intimidating and otherwise abuseing the powers of her office to her advantage and against the Berry's, whom she was hired to serve;

d.      failing to adhere to the appropriate procedures and regulations which would have controlled or governed her investigation into the Berry's. Had she adhered to these procedures agents, foster parents, and/or employees under the circumstances outlined in this Complaint as well as for screening and hiring its employees, agents, and foster p thus depriving members of the public, including the Plaintiffs, of their rights under the United States Constitutions;

e and other acts as may be proven at trial.

52.      The acts of Defendants as afore described entitle Plaintiff to an award of compensatory damages.  In addition, such acts and omissions were intentional, wanton, malicious, oppressive, undertaken with reckless indifference, thus entitling Plaintiff to an award of punitive damages against said Defendant in his individual capacity.

53.      Defendants' acts violated 42 U.S.C. § 1983 by depriving the Berry's of their constitutional right to due process and "family integrity" under the Fourteenth Amendment  and as a result of such acts, Plaintiff sustained damages as set forth herein.

## COUNT V:  DEPRIVATION OF FOURTH AMENDMENT CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1983

54.      The Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set out herein.

55.      The actions by Defendant Simms and Defendant Doe,  in falsely representing to Plaintiffs the extent of their authority as DHS investigators Plaintiffs without a search warrant, court order or probable cause violated their Fourth Amendment rights to be free from unreasonable search and seizure, and, thus, violated 42 U.S.C. § 1983.

56. The actions of the Defendants were the direct and proximate cause of the violations of Plaintiffs' Fourth Amendment rights, pain, suffering, mental distress, anguish, humiliation, loss of liberty, and legal expenses, as set forth more fully above.

## JURY DEMAND

57. The Plaintiff's herein demand a trial by jury.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs respectfully requests that upon a trial of these causes, judgment be entered against Defendants for all damages available at law, including all present and future special damages, general damages, punitive damages, attorney's fees and all other damages available to the Plaintiff under 42 U.S.C. § 1983 caused by the acts and/or omissions of the Defendants and other such legal or equitable remedies and relief prayed for herein

Respectfully submitted, this the ___17th___ day of March, 2017.

**SCOTT AND JENNIFER BERRY,
INDIVIDUALLY AND ON BEHALF
OF THE MINOR CHILDREN, C.W.B.,
R.L.C., C.C. and A.A.C., and C.D.B.**

By: _Edward Gibson w/permission KS_
EDWARD GIBSON, ESQ. (MSB. NO. 100640)

**OF COUNSEL:**

EDWARD GIBSON, ESQ. (MSB. NO. 100640)
HAWKINS | GIBSON, PLLC

153 Main St.
Bay St. Louis, Mississippi 39520
Telephone: (228) 467-4225
Facsimile: (228) 467-4212
Email: egibson@hgattorneys.com

The Sierra Firm, LLC
Mauricio Sierra, Esq.[2]
Thee Sierra Firm, LLC
7214 St. Charles Ave.
Campus Box 913
New Orleans, LA 70118

---

[2] Subject to admission pro hac vice